Charles **PINKNEY** et al., Plaintiffs,

v.

**OHIO ENVIRONMENTAL PROTECTION AGENCY** et al.,
Defendants.

No. C 73–1159.

United States District Court,
N. D. Ohio, E. D.

Jan. 17, 1974.

Bernard A. Berkman, Charles M. Delbaum, Lawrence S. Levy, Cleveland, Ohio, for plaintiffs.

George J. Umstead, Mark Schlachet, Cleveland, Ohio, for Edward J. DeBartolo Corp.

Richard J. Dickinson, Columbus, Ohio, for the Ohio Dept. of Industrial Relations, Joe Shump, Donald McMillan and William Brown.

A. Mark Segreti, Jr., Columbus, Ohio, for defendants Ira Whitman and the Ohio Environmental Protection Agency.

Donald C. Freda, Cleveland, Ohio, for Frank Spremulli and Basil Sapienza.

Jeffrey L. Kocian, Cleveland, Ohio, for John H. Puzenski and the Cuyahoga County Sanitation Dept.

Russell E. Train, Administrator, Environmental Protection Agency, Washington, D. C.

Christopher R. Schraff, Columbus, Ohio, for John Gilligan, Governor.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This suit is brought on behalf of a class of all residents and property own-

ers in Cuyahoga County, Ohio, alleging violations of the Clean Air Act of 1970 and United States Constitution through the actions or failure to act by governmental officials which relate to a planned shopping mall development. Plaintiffs seek declaratory and injunctive relief against the governmental officials and agencies which they claim have been, will be or should be involved in the granting of permits with respect to the development.

Defendants include the developer, the Edward J. DeBartolo Corporation ("DeBartolo"); officials of the Village of North Randall, Ohio, where the shopping mall will be located; the Cuyahoga County Sanitation Department and the Chief Officer thereof; the Ohio Environmental Protection Agency and its Director; the Ohio Department of Industrial Relations and officials thereof; the Ohio Attorney General and Governor and the Administrator of the Environmental Protection Agency.

The matter is presently before the Court on plaintiffs' motion for a preliminary injunction and defendants' motion to dismiss or for summary judgment. The Court held a hearing on December 17, 1973, which was limited to the issues raised by the motions to dismiss and to a portion of the issues raised by the motion for a preliminary injunction. The Court severed and postponed the hearing on whether plaintiff had been irreparably harmed pending its ruling on the motions to dismiss.[1]

Prior to discussing the merits, certain undisputed facts are relevant. Defendant DeBartolo plans to construct a large enclosed shopping center mall and may also construct an apartment and office complex on a parcel of real estate located in the Village of North Randall, Cuyahoga County, Ohio. At the time of the hearing the Village of North Randall had granted building permits with re-

spect to two buildings. The Ohio Department of Industrial Relations had given plan approval for the shopping mall but had issued no building permits.

Plaintiffs oppose the development because they claim that it will attract air-polluting automobiles, it will overburden sewers and will detrimentally affect property values. They have also filed an action in state court charging violations of state and local law but seek in this suit to challenge primarily the absence of statutory procedures to determine the environmental impact of the development.

For reasons which will be more fully explained below, the Court concludes on the basis of the allegations of the complaint and arguments of counsel that the Clean Air Act claims are barred by the plaintiffs' failure to observe the procedural requisites for filing such suits and that the Constitutional claims are without merit.

## I. CLEAN AIR ACT CLAIMS

Plaintiffs raise the following three claims which are based on the Clean Air Act of 1970, 42 U.S.C. § 1857 et seq. (the "Act"):

A. That the proposed development will violate those portions of the Act which relate to ambient air quality standards for six pollutants;

B. That Ohio has violated the Act by failing to promulgate regulations for indirect sources of ambient air pollution; and

C. That the Administrator of the Environmental Protection Agency (EPA) has abused his discretion in delaying the effective date of federal regulations with respect to indirect sources of ambient air pollution for 180 days.

The Clean Air Act specifically authorizes civil suits to enforce its provisions and to question the actions of the Ad-

---

1. The Administrator of the Environmental Protection Agency was joined in the second amended complaint which was not filed until December 4, 1973 and the Administrator did not receive notice of the hearing. The Court

proceeded with the hearing with the proviso that the Administrator should not be bound by any ruling without first having the opportunity to present arguments.

ministrator. Regarding suits by private citizens for violations of the Act, such as claims A and B above, the Act provides in relevant part:

(a) . . . any person may commence a civil action on his own behalf —(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation . . . (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator. 42 U.S.C. § 1857h–2(a).

With respect to suit suits, the Act requires notice to the Administrator and other defendants 60 days prior to filing such private suits. The relevant language of the Act specifically provides:

(b) *No action* may be commenced . . . prior to 60 days after plaintiff has given notice of the violation . . . 42 U.S.C. § 1857h–2(b)(1)(A) (Emphasis added.)

In addition to the provisions limiting the manner of commencing private suits for alleged violations of the Act, there are forum limitations for suits seeking review of administrative actions in promulgating regulations under the Act, such as claim C above. In relevant part, the Act limits the forum for such actions as follows:

A petition for review . . . of the Administrator's action in approving or promulgating any implementation plan under section 1857c—5 of this title or section 1857c—6(d) of this title may be filed only in the United States Court of Appeals for the appropriate circuit. 42 U.S.C. § 1857h–5(b)(1).

In this case, the plaintiffs have not provided the 60-day notice required prior to filing a private suit for alleged violations and have not filed the suit in the United States Court of Appeals as required for suits for administrative review. However, they assert that the claims may be maintained in spite of their failure to follow the procedures discussed above, because the claims fall within exceptions to the procedural requirements.

 With respect to notice, plaintiffs assert that a statutory provision in the Act disclaiming any intent to restrict rights makes the notice requirements for private suits unnecessary here. The subsection in question provides:

(e) Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). 42 U.S.C. § 1857h–2(e).

The preceding language, however, clearly refers to suits arising under laws other than the Clean Air Act. Indeed, any other interpretation would render the notice requirements meaningless because suits for violations of the Act would regularly be filed without prior notice. Moreover, this is the interpretation suggested by the legislative history of the Act. In explaining the Senate-originated provision for private suits, the Conference Report states:

Other rights to seek enforcement of standards under *other provisions of law* were not affected. 1970 U.S.Code Cong. & Admin.News, pp. 5374, 5388 (91st Congr., 2d Sess.) (Emphasis added).

Since all three of plaintiffs' statutory claims are based on rights arising under the Clean Air Act, subsection (e) does not exempt plaintiffs from the mandatory 60-day notice requirement prior to commencing suit.

With respect to the requirement that the challenge to the Administrator's acts should be filed in the United States Court of Appeals, plaintiffs argue that the requirement does not preclude a suit in United States District Court under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. Plaintiffs' argument in this respect is, however, contrary to the weight of authority. Generally, if Congress has provided adequate procedures for judicial review within a given statutory scheme, the prescribed procedures are exclusive. 5 U.S.C. § 703; Frito-Lay, Inc. v. F. T. C., 380 F.2d 8 (5th Cir. 1967); United States v. Southern Ry. Co., 364 F.2d 86 (5th Cir. 1966) cert. denied 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967). In fact, the Administrative Procedure Act provides explicitly:

> The form of proceeding for judicial review is the special statutory proceeding relevant to the subject matter . . . or, *in the absence or inadequacy thereof,* any applicable form of legal action . . . . 5 U.S.C. § 703 (Emphasis added.)

Since the Clean Air Act provides an adequate provision for judicial review of acts in approving or promulgating any plan and since the delay in the ambient air regulations challenged here is such an act, the plaintiffs are required to follow the prescribed procedures of the Clean Air Act and to file the administrative review claim in the United States Court of Appeals. 42 U.S.C. § 1857h–5 (b)(1).

The failure of plaintiffs to follow the relevant notice and forum requirements for each of their Clean Air Act claims precludes the maintenance of such claims.

## II. CONSTITUTIONAL CLAIMS

Plaintiffs raise the following Constitutional claims under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343 and 1331:

A. That they have a constitutionally protected right to a healthful environment, which has been infringed by Ohio officials;

B. That the lack of State and municipal procedures for considering the environmental impact of the shopping center constitutes a denial of procedural due process;

C. That the State procedures for issuing building permits deny plaintiffs equal protection of the laws and procedural due process; and

D. That permits for two buildings have been arbitrarily issued by the Mayor of the Village of North Randall.

These claims are interrelated in plaintiffs' eloquent Post Hearing Brief, as follows:

> We contend that the citizens of the State of Ohio who are reached by the effects of this environmental assault have a federal constitutional right to be free of unreasonable contamination of their air, water supply and other fundamental life sources, that this fundamental right can only be protected by affirmative enforcement by state government, that there presently exists in the State of Ohio no machinery of any kind, prior to construction, to examine, limit or control, for environmental purposes, private developments of the kind presently before the Court, and that this failure to protect the fundamental rights of affected citizens constitutes a denial of both substantive and procedural due process for which plaintiffs and the class they represent are entitled to equitable redress under the Civil Rights Act. (Numbers omitted.)

For purposes of this opinion, each claim will be discussed separately.

### A. *Healthful Environment as Fundamental Right*

Plaintiffs urge the Court to rule that the right to live in a healthful environment is a fundamental right under the United States Constitution and may not be infringed except as required to serve a compelling state interest.

The criteria for determining whether an interest is a fundamental right under the Constitution so as to be subject to strict scrutiny was discussed recently by

the Supreme Court in San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), with the Court in disagreement on the proper test. In that decision five members of the Court agreed that the importance of a right is not the critical determinant in ruling whether that right is fundamental:

> It is not the province of this Court to create substantive constitutional rights in the name of guaranteeing equal protection of the laws. Thus, the key to discovering whether education is 'fundamental' is not to be found in comparisons of the relative societal significance of education as opposed to subsistence or housing. Nor is it to be found by weighing whether education is as important as the right to travel. Rather, the answer lies in assessing whether there is a right to education explicitly or implicitly guaranteed by the Constitution. Id. 33, 93 S.Ct. 1297, 36 L. Ed.2d 43.

See also Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

■ On the basis of the arguments presented in this case, the Court has not found a guarantee of the fundamental right to a healthful environment implicitly or explicitly in the Constitution. Therefore, in light of the prevailing test of a fundamental right, the Court is unable to rule that the right to a healthful environment is a fundamental right under the Constitution. See also Ely v. Velde, 451 F.2d 1130, 1139 (4th Cir. 1971).

### B. *Procedural Due Process and Actions of Private Persons*

In this branch of their argument plaintiffs claim that they are entitled to due process protection when their interests in a healthful environment and maintaining property values are infringed. Although they argue that the task of determining what form of process is required belongs to State in the first intance, they urge the Court to rule that the State has an affirmative duty to protect individual interests and that, because no State agency attempts to regulate the construction of indirct sources of air and water pollution such as shopping centers to insure that they will not significantly degrade the environment, the State has failed in its duty. Their argument with respect to the maintenance of property values is unclear.

■ Although the form of the process required may depend on the importance of the interests taken away, the determination of whether procedural due process applies depends on whether the interest taken away is encompassed within the Fourteenth Amendment's protection of liberty and property. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Roth* the Court explained:

> To determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake. 408 U.S. at 570, 571, 92 S.Ct. at 2705.

As to those interests included the Court has stated that due process applies

> not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men. Meyer v. Nebraska, 262 U. S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

There are numerous issues raised by the argument that due process attaches to the act of a private individual which results in the pollution of the air and water of the County and in the reduction of property values and by the argument that the State has an affirmative duty to provide the process. Without expressing an opinion as to whether the

other requirements of the test are met, the Court will examine whether plaintiffs have alleged a "deprivation" of liberty or property, as "deprivation" is used in other due process cases. In Board of Regents v. Roth, the Supreme Court discussed the term "deprivation", recognizing that foreclosure from future employment would be the type of interest to which due process would attach but holding that a substantial adverse effect upon the career interests of the individual was not sufficient to constitute a "deprivation":

> Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.' 408 U.S. at 574, n. 13, 92 S.Ct. at 2708.

In most procedural due process cases, the "deprivation" is a denial which is obvious and not a matter of degree. In contrast to a denial of employment or welfare benefits, however, the interest in a heathful environment alleged in this suit is not one for which a denial would be obvious. At most, plaintiffs will show that the shopping center has an adverse effect on the environment of Cuyahoga County. Whether this effect is minimal or of great magnitude depends on the test adopted for each of the possible adverse effects—a matter of considerable debate in the scientific community.

■ For these reasons, the Court concludes that the task of defining a "deprivation" as that term relates to the interest in a healthful environment is beyond the competence of the courts and is instead a task characteristically performed by the legislative branch. Therefore, the Court does not rule that an interest in a healthful environment, as alleged on the facts of this case, is an interest of such a nature that procedural due process attaches.

Furthermore, apart from the Constitutional considerations, the Court notes that the legislatures have responded to the need for environmental controls. The Court of Appeals for the District of Columbia has ruled that the Clean Air Act requires the promulgation of regulations for indirect sources of air pollution and has directed the Administrator, subject to extensions of time by that Court, to promulgate such regulations. Natural Resources Defense Council, Inc. v. Environmental Protection Agency, Nos. 72–1522, 72–1598, 72–1810, 72–1941, 72–1982, 72–1985, 72–2028, 72–2159 (D. C.Cir. March 12, 1973; July 28, 1973; October 23, 1973); 38 F.R. 29893 (Oct. 30, 1973). The Court notes that, insofar as water pollution results from air pollution, this will also receive protection by the regulations. In addition, the procedural protection of property values by this type of development is provided through local zoning laws. Ohio Rev. Code § 713.12.

■ Without reaching the other questions related to the determination of whether property values or a heathful environment are interests to which procedural due process protection attaches, the Court concludes that plaintiffs have not alleged in their complaint facts which show a deprivation of protected rights of the nature which require the affirmative provision of a hearing by the State.

## C. State Procedures for Issuing Building Permits

Plaintiffs contend that it is a denial of equal protection to permit an appeal for the applicant if the Ohio Department of Industrial Relations declines to issue a building permit while withholding it from the public if the Department does issue a permit and a denial of procedural due process to withhold a hearing prior to issuance of a permit.

■ In a situation in which the strict scrutiny test is inapplicable, a statutory classification will be reviewed under the Equal Protection Clause only to determine whether the State's system may be shown to bear some rational relationship to legitimate state purposes. Yick Wo

**312**

v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957). In this case there is no allegation in the Second Amended Complaint that permitting only an applicant the right to appeal an adverse decision is not rationally related to a legitimate state interest.

■ Furthermore, plaintiffs have made no allegation sufficient to demonstrate that they are harmed by the procedures in question. Only considerations of safety and sanitation could be raised at a hearing before the Department of Industrial Relations officials and these considerations are limited to the safety and sanitation of the construction of the building itself. Ohio Rev.Code § 3781.06. In this case, there is no allegation that the planned construction is either unsafe or unsanitary as those terms are defined in the statute. Second Amended Complaint, Para. 17. Therefore, plaintiffs do not have standing to challenge the failure to grant a hearing. See generally, Santa Barbara v. Malley, 426 F.2d 171 (9th Cir. 1970), cert. den. 396 U.S. 950, 90 S. Ct. 394, 24 L.Ed.2d 257, 400 U.S. 999, 91 S.Ct. 454, 27 L.Ed.2d 450.

### D. *Issuance of Building Permits*

■ Plaintiffs claim that the arbitrary issuance of building permits by the Mayor of North Randall violates the Due Process Clause. They do not challenge the zoning procedures through which the area in question was zoned for commercial development.

The basis for their argument, set forth in the Brief in Support of Motion for Preliminary Injunctions, is that the permits were signed by the Mayor rather than the Inspector of Buildings, who is designated as the official to review building permit applications by the Codified Ordinances of the Village of North Randall § 1321.01. It is not apparent to this Court how the difference in the official executing the permit, if proved, would constitute a deprivation of Consti-

tutional rights. At the same time, plaintiffs have not asked the Court to take pendent jurisdiction of state claims. In fact, plaintiffs have scrupulously separated federal and state claims and are litigating state claims in a separate suit in state courts. Therefore, the Court will decline to take pendent jurisdiction of the non-federal claims raised herein.

### III. CONCLUSION

For the reasons stated above, the Court rules that the plaintiffs have failed to state a claim upon which relief may be granted either on the basis of the Clean Air Act or the Constitution and sustains the defendants' motions to dismiss. *It further overrules the motion for a preliminary injunction.*

Accordingly, the Second Amended Complaint is hereby dismissed.

It is so ordered.