**NORTHEAST JET CENTER, LTD.**

v.

**LEHIGH–NORTHAMPTON AIRPORT AUTHORITY, Jack Yohe and Sanford Wartell.**

Civ. A. No. 90–1262.

United States District Court, E.D. Pennsylvania.

May 31, 1991.

**674**

B. Chirstopher Lee, Ellen Rosen Rogoff, Philadelphia, Pa., David K. Monroe, Joel E. Laiks, Washington, D.C., for plaintiff.

Allen D. Black, J. Bruce McKissock, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

### INTRODUCTION

The defendants in the captioned matter have moved to dismiss plaintiff's first amended complaint. The plaintiff has alleged numerous causes of action in the following counts: (1) violation of the plaintiff's constitutional rights (42 U.S.C.A. § 1983 (West 1981)); (2) violation of the Sherman Antitrust Act, 15 U.S.C.A. §§ 1 *et seq.* (West 1973 & Supp.1991); (3, 4, & 5) civil RICO violations of 18 U.S.C.A. §§ 1962(a), (b), (c) and (d) (West 1984 & Supp.1991) respectively; (6) violation of the Airport and Airway Improvement Act, 49 U.S.C.A.App. § 2210 (West Supp.1991); (7) tortious interference with business relations; (8) tortious interference with prospective business relations; (9) violation of the Pennsylvania Municipality Authorities Act of 1945, Pa.Stat.Ann. tit. 53, §§ 301 *et seq.* (Purdon 1974 & Supp.1990); (10) defamation; (11) breach of contractual duty of good faith dealing; (12) respondeat superior; and (13) aiding and abetting.

All of these claims arise out of the plaintiff's allegations of unfair and discriminatory treatment in its role as a fixed-base operator [1] ("FBO") at the Allentown–Bethlehem–Easton Airport run by the Airport Authority and its director, Jack Yohe, and the Chairman of the Airport Authority's Board of Directors, Sanford Wartell. In brief, the plaintiff alleges that it had to sell its hangar and other facilities on the grounds of the Allentown–Bethlehem–Easton Airport in February, 1990 at an artificially depressed price of $5.1 Million. The plaintiff alleges that the sale price was artificially depressed because of actions taken by the Airport Authority and its officials. The defendants have all moved to dismiss the plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6).

Fed.R.Civ.P. 12(b)(1) allows a complaint to be dismissed for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." The criteria which a court must use in deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6) are clear. "In reviewing a motion to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Wisniewski v. Johns Manville Corp.*, 759 F.2d 271, 273 (3d Cir.1985); *Rogin v. Bensalem Twp.*, 616 F.2d 680, 685 (3d Cir.1980)." *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). Also "in deciding a Rule 12(b)(6) motion, factual allegations of the complaint are to be accepted as true and the complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. Reasonable factual inferences will be drawn to aid the pleader. *Amalgamat-*

---

1. An "FBO" provides storage, fueling, maintenance, repair and other ground-based aviation services to resident and transient aircraft using an airport.

*ed Transit Union v. Byrne,* 568 F.2d 1025, 1031 (3d Cir.1977) (in banc) (Aldisert, J., dissenting); *Knuth v. Erie–Crawford Dairy Cooperative Ass'n,* 395 F.2d 420 (3d Cir.1968)." *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984).

With these standards in mind, we shall consider each of the defendants' arguments in turn.

*COUNT 1—42 U.S.C.A. § 1983*

In Count one of its amended complaint, the plaintiff has brought an action under 42 U.S.C.A. § 1983.[2] The plaintiff alleges a violation of its rights to equal protection and due process of law. The defendants challenge the adequacy of the plaintiff's pleading of this cause of action on several grounds: that the plaintiff has not alleged a property interest protected by the due process clause; that the plaintiff improperly alleges a violation of due process under the Federal Aviation Act of 1958, 49 U.S.C.A.App. § 1349 (West 1991)[3]; that the plaintiff has not alleged the violation of any rights entitled to due process protection; that the plaintiff has failed to allege a denial of equal protection; that the plaintiff's allegations are vague and conclusory; that the plaintiff's claim against the defendant Airport Authority fails to describe a custom or policy; and that the plaintiff's claim against defendants Yohe and Wartell is barred by the defense of qualified immunity. Before discussing the merits of the defendants' challenge, we shall first examine exactly what the plaintiff has alleged in the first count of its amended complaint.

The plaintiff alleges that the defendants enforced against it alone—and not against other similarly situated persons operating at the Airport—certain regulations and requirements which the defendants knew were not in effect. The plaintiff also alleg-

es a pattern of arbitrary, capricious, and discriminatory acts on the part of the defendants, including the selective enforcement of void regulations referred to above, as well as the following: the defendants' enforcement of a "policy" of not granting "through the fence" agreements to commercial operators but not against ITT and other similarly situated persons; requiring the plaintiff to obtain an FAA repair station certificate when such a requirement was not enforced against other FBOs at the airport; enforcing FBO standards solely against the plaintiff; offering extremely favorable terms to the interim FBO and not the plaintiff in order to enable the interim FBO to compete unfairly against the plaintiff; luring away the plaintiff's customers; and disparaging the plaintiff's business reputation as an FBO. (Amended Complaint, ¶¶ 41 and 42).

The plaintiff continues its allegations of constitutional violations by alleging deprivation of property in the following ways: breach of the plaintiff's lease; inequitable and fraudulent enforcement of Airport Authority regulations and policy; conduct violating the antidiscrimination provisions of the Federal Aviation Act; interference with business relations; and malicious publication of false and derogatory statements. Specifically, the plaintiff has alleged that the defendants: prevented the plaintiff from obtaining financing to expand its hangar in connection with the plaintiff's ten-year lease extension with Union Pacific; persuaded Union Pacific to sever its business relationship with the plaintiff; prevented the plaintiff from receiving an FAA repair station certificate through numerous contacts with FAA officials, and interfered with the plaintiff's business relationships and prospective business relationships by making malicious and defamatory state-

---

**2.** 42 U.S.C.A. § 1983 (West 1981) reads in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

**3.** The plaintiff does not provide any statutory citation to the Federal Aviation Act. We believe that the plaintiff is referring to 49 U.S.C.A.App. § 1349 (West Supp.1991).

ments regarding the plaintiff's financial condition, qualifications, and performance as an FBO. Among the damages that the plaintiff alleges is the loss of the benefits of the plaintiff's ten-year lease extension with Union Pacific. (Amended Complaint, ¶ 44).

■ In order to plead a § 1983 action properly, a plaintiff must make two allegations: (1) that some person has deprived him of a federal right and (2) that the person who has deprived him of that right has done so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). The defendants do not challenge the plaintiff's fulfillment of the second requirement, but they do challenge the plaintiff's fulfillment of the first. Therefore, our inquiry must focus on whether the plaintiff has alleged the deprivation of a "federal" right.

We agree with the defendants that the amended complaint is unclear as to whether the plaintiff is alleging a deprivation of *procedural* or *substantive* due process. "A procedural due process claim is based on an allegation that the procedures used by the state in effecting the deprivation of a life, liberty or property interest were inadequate. Substantive due process is not a claim of procedural deficiency but rather a claim that the state's conduct is inherently impermissible." *Metcalf v. Long*, 615 F.Supp. 1108, 1118 (D.Del.1985). There is no allegation that any state procedure is constitutionally inadequate; we must, therefore, assume that the plaintiff is alleging a deprivation of some substantive due process right. It is upon this assumption that we shall proceed.

■ We believe that most of the grounds chosen by the plaintiff to support its alleged deprivation of "due process" must fail. To begin with, the mere breach of a contract by a government or a government instrumentality does not give rise to a constitutional right. *Jimenez v. Almodovar*, 650 F.2d 363, 370 (1st Cir.1981) ("A mere breach of contractual right is not a deprivation of property without *constitutional* due process of law.... Otherwise virtually every controversy involving an alleged

breach of contract by a government or governmental institution or agency or instrumentality would be a constitutional case."); *Medical Laundry Services v. Board of Trustees of the University of Alabama*, 906 F.2d 571 (11th Cir.1990) (breach of contract claim was not a sufficient basis for a § 1983 action).

The plaintiff is also evidently basing a due process violation on conduct violating the antidiscrimination provisions of the Federal Aviation Act. 49 U.S.C.A.App. § 1349(a) reads:

(a) No Federal funds, other than those expended under this chapter, shall be expended, other than for military purposes (whether or not in cooperation with State or other local governmental agencies), for the acquisition, establishment, construction, alteration, repair, maintenance, or operation of any landing area, or for the acquisition, establishment, construction, maintenance, or operation of air navigation facilities thereon, except upon written recommendation and certification by the Secretary of Transportation that such landing area or facility is reasonably necessary for use in air commerce or in the interests of national defense. Any interested person may apply to the Secretary of Transportation, under regulations prescribed by him, for such recommendation and certification with respect to any landing area or air navigation facility proposed to be established, constructed, altered, repaired, maintained, or operated by, or in the interests of, such person. There shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended. For purposes of the preceding sentence, the providing of services at an airport by a single fixed-based operator shall not be construed as an exclusive right if it would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and if allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing

agreement between such single fixed-based operator and such airport.

■ There is no private right of action under the Federal Aviation Act, 49 U.S.C.A.App. § 1349. *Interface Group, Inc. v. Massachusetts Port Authority*, 816 F.2d 9, 15 (1st Cir.1987). The plaintiff, however, puts forward this argument in its brief: "NEJ has not claimed that defendants' violation of the Federal Aviation Act in and of itself is sufficient to support a violation of the due process clause, but rather, that the misconduct which forms the basis for a violation of that statute is also part of the conspiracy underlying NEJ's due process claim. *See* Complaint at ¶ 44–45." *Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint*, at 11 n. 4.

■ What the plaintiff has failed to explain to the court is how its right to be free of such alleged misconduct rises to the level of a federal right protected by 42 U.S.C.A. § 1983. The Second Circuit, which has considered this issue, has held in *Montauk–Caribbean Airways, Inc. v. Hope*, 784 F.2d 91 (2d Cir.), *cert. denied*, 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986):

> Finally, appellant asserts that the court erred in dismissing its claim under § 1983. The comprehensive enforcement scheme provided in the Federal Aviation Act manifests congressional intent to foreclose an action under § 1983. *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 28 [101 S.Ct. 1531, 1545, 67 L.Ed.2d 694] (1981); *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19 [101 S.Ct. 2615, 69 L.Ed.2d 435] (1981). Appellant must look to the administrative agency responsible for the enforcement of these provisions. *Caceres Agency, Inc. v. Trans World Airways*, 594 F.2d 932 (2 Cir.1979).
>
> We hold that the District Court was correct in dismissing appellant's claims under the Federal Aviation Act and § 1983.

*Id.* at 98.

We are persuaded that *Montauk–Caribbean Airways, Inc.* was correctly decided and, therefore, find that the plaintiff may not base its § 1983 action on conduct alleged to be violative of the Federal Aviation Act.

The plaintiff further alleges that the defendants "interfered with the plaintiff's business relationships and prospective business relationships by making malicious and defamatory statements regarding the plaintiff's financial condition, qualifications and performance as an FBO." Defamation alone, without infringement of some tangible interest, does not involve the violation of a constitutional right. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In the case at bar, however, the plaintiff has alleged the infringement of a tangible interest, *i.e.*, actual and prospective business relationships, as a result of the defendants' defamatory remarks. We believe that the plaintiff has properly pleaded a § 1983 claim in this regard. *See Petrone v. City of Reading*, 541 F.Supp. 735 (E.D.Pa.1982) (plaintiff properly stated a claim under 42 U.S.C.A. § 1983 where defamation was linked to loss of business and later opportunities for employment).

■ The defendants' challenge to the plaintiff's allegations of a denial of equal protection is less successful. The plaintiff, in its amended complaint, does not allege the existence of legislative classifications at work to the detriment of some fundamental constitutional right. The plaintiff is here only alleging that existing regulations and policies were applied to it and not to others who were similarly situated. "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944).

Construing the allegations of the complaint in the light most favorable to the plaintiff, we conclude that the plaintiff has adequately alleged that a governmental en-

tity has enforced certain regulations and policies solely against the plaintiff and not against other similarly situated FBOs. This, in conjunction with the plaintiff's allegations of conspiracy among the defendants, and their purpose of harassing the plaintiff with the intent of injuring its business and appropriating its business and property, convinces us that the plaintiff has met the *Snowden* requirements for a proper pleading of a denial of equal protection.

The other challenges raised by the defendants may be disposed of as follows. We are aware that, where an action is brought under 42 U.S.C.A. § 1983, a special degree of precision must be injected into the pleading of the complaint. The general standard for pleading civil rights claims is a stringent one. The requirement is that the complaint state facts upon which the court can weigh the substantiality of the claim. *Negrich v. Hohn*, 379 F.2d 213 (3d Cir.1967); *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir.1976); and *LaPlant v. Frazier*, 564 F.Supp. 1095 (E.D.Pa.1983). Under the standard, a plaintiff must state the conduct violating his or her civil rights, when and where the conduct occurred, and who was responsible. The complaint will be dismissed if it contains only vague and conclusory allegations. *Boykins v. Ambridge Area School District*, 621 F.2d 75, 80 (3d Cir.1980); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir.1978).

The defendants argue that it is not clear what acts the individual defendants are charged with. At paragraphs 21, 28, and 40, the complaint specifically alleges the individual conduct of Messrs. Wartell or Yohe. Paragraph 21 reads:

21. NEJ is informed and believes, and alleges thereon, that, in or about September, 1988, Defendants Airport Authority, Yohe and Wartell (the "Airport Defendants") devised a scheme to defraud NEJ and others, and Defendants Wartell and Yohe, in their official capacities, commenced and ordered the Airport Authority to commence, in combination and conspiracy with others, a purposeful course of conduct designed to interfere with NEJ's business relationships, prevent NEJ from obtaining FAA certification, lure away NEJ's tenants and customers, prevent NEJ from obtaining financing to expand its business, wrongfully drive NEJ out of the FBO business, wrongfully cancel the NEJ lease, and wrongfully appropriate NEJ's valuable hangar and other property at a price far below its actual value.

Paragraph 28 reads:

28. NEJ relied on the Airport Defendants' misrepresentation that the FBO Standards were in effect and, in early February, 1989, submitted proof that it was in compliance with the the the FBO Standards. NEJ also informed the Airport Defendants that NEJ had applied for, and shortly would receive, a new FAA repair station certificate. Upon learning that NEJ expected to soon receive a new FAA repair station certificate, Defendant Yohe telephoned FAA officials in Allentown, New York, and Washington in an effort to prevent NEJ from receiving a new FAA repair station certificate, so that NEJ could not 'cure' the improper default.

Paragraph 40 reads:

40. Under color of state law, and pursuant to an official policy of the Airport Authority promulgated by Defendants Yohe and Wartell, the Airport Defendants have deprived, and conspired to deprive, NEJ of its equal protection and due process rights under the Fourteenth Amendment to the United States Constitution, and Article I, 9 and 26 of the Pennsylvania Constitution.

We believe that the plaintiff has sufficiently alleged the conduct of the defendants Yohe and Wartell to put them on notice of the charges against them.

■ The defendants also argue that the complaint fails to plead a constitutional violation perpetuated according to a custom or policy of the Airport Authority. A municipal authority can be sued under § 1983 only when the violations are a result of a "custom or policy" of the municipality. *Monell v. Department of Social Services,*

436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978).

The defendants contend that Yohe and Wartell did not possess any policy-making authority and that the plaintiff has not alleged a true "policy" or "custom" on the part of the Airport Authority. With regard to the first argument, we believe that this is a factual matter which cannot be resolved on a motion to dismiss. With regard to the second, we must look to the actual allegations in the amended complaint. Paragraph 21 alleges:

> 21. NEJ is informed and believes, and alleges thereon, that, in or about September, 1988, Defendants Airport Authority, Yohe and Wartell (the 'Airport Defendants') devised a scheme to defraud NEJ and others, and Defendants Wartell and Yohe, in their official capacities, commenced and ordered the Airport Authority to commence, in combination and conspiracy with others, a purposeful course of conduct designed to interfere with NEJ's business relationships, prevent NEJ from obtaining FAA certification, lure away NEJ's tenants and customers, prevent NEJ from obtaining financing to expand its business, wrongfully drive NEJ out of the FBO business, wrongfully cancel the NEJ lease, and wrongfully appropriate NEJ's valuable hangar and other property at a price far below its actual value.

Paragraph 22 further alleges that defendant Wartell, as Chairman of the Airport Authority's Board of Directors, and defendant Yohe, as the Airport's Director, had policy-making authority to cause the Airport Authority to take the actions recited above against the plaintiff and that this decision had the effect and force of an official policy of the Airport Authority.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court stated: "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480, 106 S.Ct. at 1298. As the Supreme Court noted:

> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. . . .

*Id.* at 481, 106 S.Ct. at 1299 (footnote omitted).

The Supreme Court held in *Pembaur* that "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483, 106 S.Ct. at 1300.

Looking to paragraphs 21 and 22 of the amended complaint, we find allegations of a "purposeful" course of conduct against the plaintiff taken by defendants possessed of policy-making authority for the Airport. We believe that these allegations are sufficient under *Pembaur* to withstand a motion to dismiss.

■ The defendants raise the defense of qualified immunity in their motion to dismiss. A government official performing a discretionary function is subject to suit for violation of constitutional rights if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing would violate that right." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). What a "reasonable" official would understand is not a determination which should be made on a motion to dismiss in the circumstances here. We shall, therefore, deny the defendants' motion on this ground as well.

Finally, we reject the defendants' argument that the plaintiff's equal protection

claim should be dismissed because the defendants acted out of a concern for safety at the airport. Such an argument involves factual questions which cannot be resolved on a motion to dismiss.

### COUNT 2—ANTITRUST CLAIM

The defendants argue that the plaintiff's cause of action based upon the alleged violation of the Sherman Act, 15 U.S.C.A. §§ 1 *et seq.*, should be dismissed on the basis of the Local Government Antitrust Act, 15 U.S.C.A. § 35(a) (West Supp.1991). That statute reads: "No damages, interest on damages, costs, or attorney's fees may be recovered under section 15, 15a, or 15c of this title from any local government, or official or employee thereof acting in an official capacity." Paragraph 51 of the amended complaint specifically requests, as relief, "treble damages, attorneys' fees, interest and costs."

■ Defendant Lehigh–Northampton Airport Authority would fit into the definition of "local government" found at 15 U.S.C.A. § 34(1) (West Supp.1991):

For purposes of this section and sections 35 and 36 of this title—

(1) the term 'local government' means—

(A) a city, county, parish, town, township, village, or any other general function governmental unit established by State law, or

(B) a school district, sanitary district, or any other special function governmental unit established by State law in one or more States.

. . . .

We believe that an airport authority would fit the definition "any other special function governmental unit established by State law ..." under 15 U.S.C.A. § 34(1)(B). Legislative history supports our belief. As the House Judiciary Committee stated, in discussing the scope of the Act, especially the inclusion of "special function governmental unit[s]":

Examples of special purpose political subdivisions included within the definition are planning districts, water districts, sewer districts, irrigation districts, drainage districts, road districts, and mosquito control districts. Such a subdivision would have a geographic jurisdiction that is not contiguous with, and is generally substantially smaller than, that of the State that established it. The definition, however, would encompass special purpose governmental units that operate in more than one State. For example, regional planning boards, environmental organizations, or *airport or port authorities* may be established in two or more States.

H.R.Rep. No. 965, 98th Cong.2d Sess. 19–20, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4602, 4620–21 (emphasis added).

The plaintiff contends that the immunity extended by the statute covers only reasoned, legitimate, authorized acts of a municipal authority which reduce competition and not what they allege is a secret conspiracy with third parties designed to eliminate competition through conduct outside the municipal authority's powers. With regard to the individual defendants Yohe and Wartell, the plaintiff further contends that their clandestine misconduct cannot fall within the meaning of "official capacity" as used in the Act.

Although neither we nor the parties have been able to locate authority in this Circuit regarding the "absolute" nature of the immunity granted by the Local Government Antitrust Act, the District Court in *Palm Springs Medical Clinic, Inc. v. Desert Hospital*, 628 F.Supp. 454 (C.D.Cal.1986) has conducted an extensive analysis of the Act's legislative history. The court concluded that the immunity granted by the Act is absolute, *i.e.*, that it need not be confined only to conduct within the government's lawful regulatory authority. The *Desert Hospital* court stated:

The legislative history thus demonstrates that, while the House may have originally contemplated an 'official action' limit on both local government and official immunity, both the House and Senate passed the final version of the 1984 Act with the intent that local government immunity be blanket and ab-

solute. PSMC [the plaintiff], as a final argument, contends that such blanket immunity is against public policy in that it would absolutely shield local governments from liability for antitrust violations. The legislative history of the 1984 Act, however, indicates that Congress thought that public policy would best be served by limiting the antitrust remedy against local governments to injunctive relief.

*Id.* at 462–63.

The examination of the legislative history of the Act done by the *Desert Hospital* court is thorough and extensive. We believe, as did the court in *Desert Hospital,* that Congress intended to create an absolute immunity for the conduct of a municipal authority, at least as far as monetary damages are concerned. Since this is precisely the relief requested by the plaintiff, we shall dismiss the plaintiff's antitrust claim for damages under the Sherman Act with prejudice.

■ The plaintiff, however, argues in its brief that its overall claim under the Sherman Act should not be dismissed because it may also require injunctive relief although plaintiff did not *specifically* request injunctive relief. The plaintiff points to paragraph 4(b) of the general prayer for relief found at the end of the amended complaint where the plaintiff asks generally "for such other relief as this Court may deem proper." We must look with a rather jaundiced eye upon a plaintiff who only needs injunctive relief when federal jurisdiction is threatened.

It appears that the state action exemption to the antitrust laws would bar even injunctive relief. The state action exemption to the antitrust laws was established by the Supreme Court in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) (Sherman Act does not apply to anticompetitive restraints imposed by the states "as an act of government") and was developed by such later cases as *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985) and, most recently, *City of Columbia v. Omni*

*Outdoor Advertising,* —— U.S. ——, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991).

In *Town of Hallie,* the petitioners, four unincorporated Wisconsin townships, sought injunctive relief against respondent, the City of Eau Claire, alleging that the City had violated the Sherman Act by acquiring a monopoly over sewage treatment services in two counties and by tying the provision of sewage treatment services to the provision of sewage collection and transportation services. The Supreme Court held that the respondent's anticompetitive activities were protected by the state action exemption to the antitrust laws. "[T]o obtain exemption, municipalities must demonstrate that their anticompetitive activities were authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service'." *Id.* 471 U.S. at 39, 105 S.Ct. at 1716 (*quoting Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 412, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978) (opinion of Brennan, J.)).

Most recently, in *Omni Outdoor Advertising,* the Supreme Court rejected a "conspiracy exception" to the state action exemption. It stated: "[W]e reaffirm our rejection of any interpretation of the Sherman Act that would allow plaintiffs to look behind the actions of state sovereigns to base their claims on 'perceived conspiracies to restrain trade', *Hoover* [*v. Ronwin* ], 466 U.S. [558], at 580 [104 S.Ct. 1989, 2001, 80 L.Ed.2d 590 (1984)]. We reiterate that, with the possible market participant exception, any action that qualifies as state action is 'ipso facto … exempt from the operation of the antitrust laws,' id., at 568 [104 S.Ct. at 1995]." *Id.* —— U.S. at ——, 111 S.Ct. at 1535. Thus, if the action of the defendants in the instant case qualifies as "state action", even a claim for injunctive relief must be dismissed.

The amended complaint alleges at paragraph 2:

Defendant LEHIGH–NORTHAMPTON AIRPORT AUTHORITY ("Airport Authority") is a municipal authority organized under the laws of the Commonwealth of Pennsylvania having its princi-

pal place of business at Allentown, Pennsylvania. The Airport Authority is the owner and operator of the Allentown–Bethlehem–Easton International Airport, commonly known as "A.B.E."

The plaintiff argues that the Municipality Authorities Act of 1945, Pa.Stat.Ann. tit. 53, §§ 301 *et seq.* is the enabling statute under which the Airport Authority exists. Pa.Stat.Ann. tit. 53, § 302(a) defines "Authority" thus: "a body politic and corporate, created pursuant to this act or pursuant to the 'Municipality Authorities Act of 1935' repealed hereby." Pa.Stat.Ann. tit. 53, § 306 A(a)(3) sets forth the purposes and powers of Authorities to include airports. That section reads:

The Authority shall be for the purpose of acquiring, holding, constructing, financing, improving, maintaining and operating, owning, leasing, either in the capacity of lessor lessee, projects of the following kind and character:

. . . .

(3) transportation, marketing, shopping, terminals, bridges, tunnels, flood control projects, highways, parkways, traffic distribution centers, parking spaces, *airports*, and all facilities necessary or incident thereto; . . . . (Emphasis supplied).

Pennsylvania, however, has not left the powers of its municipal authorities unlimited. Pa.Stat.Ann. tit. 53, § 306 A(b)(2) concerns the desire to foster competition in the Commonwealth and reads in pertinent part:

This section is subject to the following limitations:

. . . .

(2) The purpose and intent of this act being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety and prosperity, and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises, none of the powers granted by this act shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects which in whole or in part

shall duplicate or compete with existing enterprises serving substantially the same purposes. . . .

At paragraph 48 of the amended complaint, the plaintiff alleges: "The Airport Defendants have entered into an unlawful combination, conspiracy and agreement with Dynair [Fueling, Inc.] and others to unreasonably restrain trade in the provision of ground-based aviation support services by FBOs at A.B.E. Airport. . . ." The plaintiff further alleges that "Dynair, operating on behalf of the Airport Authority, will be the only FBO at A.B.E. as of March 1, 1990. Accordingly, Dynair and the Airport Authority will have a total monopoly on FBO services at A.B.E. as of March 1, 1990." (Amended Complaint, ¶ 49).

As the Supreme Court of Pennsylvania stated in *Thompson Appeal*, 427 Pa. 1, 233 A.2d 237 (1967) with regard to Pa.Stat.Ann. tit. 53, § 306 A(b)(2): "As we read the proviso relied upon by appellants its primary purpose is to protect businesses which will be competing with the condemnor's [Rostraver Township Airport Authority's] operations. . . ." *Id.* at 4, 233 A.2d 237. According to the allegations in the amended complaint, the Airport Authority, in concert with Dynair Fueling, Inc., is alleged to be competing with the plaintiff in the provision of ground-based aviation support services.

We must keep in mind that at this early stage we have before us only a motion to dismiss and that the standard is quite liberal. "[A]ll allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. [Citations omitted]." *Sturm*, 835 F.2d at 1011. We believe that, in light of this liberal standard, amendment of the complaint to include a prayer for injunctive relief would not be improper. Given Pennsylvania's limitation of the activities of municipal authorities, as found in Pa.Stat.Ann. tit. 53, § 306 A(b)(2), we believe that the plaintiff has managed to avoid application of the state action exemption to the antitrust laws, at least at this point. We shall, therefore, permit the

plaintiff to amend its complaint within the next twenty-one (21) days, to expressly seek injunctive relief under the Sherman Act if they wish. Whether the relevant market and other elements of such a claim can ultimately be proven is, of course, another matter.

*COUNT 3—RICO, 18 U.S.C.A. § 1962(a)*

The plaintiff does not contest the dismissal of the third cause of action, the alleged RICO violation of 18 U.S.C.A. § 1962(a). *See Answer of Plaintiff, Northeast Jet Center, Ltd., to Defendants' Motion to Dismiss the First Amended Complaint,* at 36 n. 18. Accordingly, we shall dismiss it. The remaining RICO theories under subsections (b), (c) and (d) will be treated next in this opinion.

*COUNT 4—RICO, 18 U.S.C.A. § 1962(b)*

██ The defendants maintain that the plaintiff has failed to plead this RICO claim properly. 18 U.S.C.A. § 1962(b) (West 1984) reads:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The "enterprise" here is alleged to be the plaintiff Northeast Jet, Ltd. ("NEJ"). Paragraph 62 of the amended complaint reads:

NEJ is and was an 'enterprise' within the meaning of 18 U.S.C. §§ 1961(b) and (d), the activities of which affect interstate commerce within the meaning of 18 U.S.C. § 1962.

As to the particular actions taken by the defendants with regard to the enterprise, the plaintiff alleges the following:

63. Defendants Airport Authority, Yohe, and Wartell knowingly devised, participated, and/or concealed a scheme to defraud NEJ and others of its business and property by misrepresenting to NEJ and others that NEJ was in default of its lease, by attempting to prevent NEJ from obtaining FAA certification, by preventing NEJ from obtaining financing to expand its business, by luring and attempting to lure away NEJ's customers, by falsely disparaging NEJ's adequacy and reliability as an FBO, and by undertaking other acts in furtherance of the scheme to defraud.

. . . .

65. As a result of their racketeering activities, defendants Airport Authority, Yohe, and Wartell conspired to, within the meaning of 18 U.S.C. § 1962(d), and did, acquire and maintain an interest in, or control of, NEJ in violation of 18 U.S.C. §§ 1962(b) and (d). In particular, as a result of defendants' racketeering activities in furtherance of their scheme to defraud, defendants acquired NEJ's facilities for much less than their actual worth.

We do not understand how any of these actions can amount to the acquisition of an "interest" in the "enterprise", plaintiff Northeast Jet, Ltd. As far as we can discern, the plaintiff here only alleges that a campaign of misrepresentation and disparagement compelled the plaintiff to sell off some of its property at an undesirable price. No acquisition of an "ownership interest" is alleged. We shall, therefore, grant without prejudice the defendants' motion to dismiss insofar as it pertains to the plaintiff's cause of action based upon 18 U.S.C.A. § 1962(b). If the plaintiff can properly allege a cause of action under this section of the RICO statute, it may do so by amendment, but this count of the amended complaint is deficient as it now stands.[4]

*COUNT 5—RICO, 18 U.S.C.A. §§ 1962(c) & (d)*

18 U.S.C.A. § 1962(c) (West 1984) reads:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of

---

**4.** Because we have decided to grant the defendants' motion to dismiss as it pertains to the plaintiff's claims under 18 U.S.C.A. §§ 1962(b) and (c) on the grounds stated above, we need not consider the defendants' challenge based on a failure to allege the "pattern of racketeering" requirement of the RICO statute or any of the alternative grounds raised by defendants.

which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

■ Under 18 U.S.C.A. § 1961(4) (West 1984), "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity; ..."

In the amended complaint, the plaintiff alleges the "enterprise" required by 18 U.S.C.A. § 1962(c) as follows, in paragraph 69:

> 69. Defendants Airport Authority, Yohe, and Wartell are an association in fact, sharing a common purpose, utility, and identifiable structure in that the Airport Authority operates the business that permits Yohe, its Director, and Wartell, its Chairman of the Board, the control and authority to devise and perpetrate its scheme to defraud NEJ and others. This association in fact was thus an 'enterprise' within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) and (d).

In the case at bar, the "association in fact" is alleged to be the three defendants themselves: the Airport Authority, Yohe, the Director, and Wartell, the Chairman of the Board of Directors. Case law in this Circuit, however, makes it clear that this attempt at pleading an "enterprise" must fail. As the court stated in *Newfield v. Shearson Lehman Brothers*, 699 F.Supp. 1124 (E.D.Pa.1988):

> In this Circuit, ... the RICO enterprise must be separate from the defendant. *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633 (3d Cir.1984). Since Shearson is a corporation, which cannot act but through its agents, plaintiff has in effect pleaded the existence of an association-in-fact of a corporation with its agents, O'Brien and Naft. This will not satisfy the nonidentity requirement. *Tarasi v. Dravo Corp.*, 613 F.Supp. 1235, 1237 (W.D.Pa.1985). As this Court has stated before '[t]o accept plaintiff's argument would be to read the

enterprise requirement out of the statute entirely, whenever a corporate defendant is involved.' *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107, 109 (E.D.Pa.1986). Plaintiff's RICO claim must be dismissed.

*Id.* at 1127.

The "enterprise" in the instant case has no separate existence apart from the very same defendants from whom the plaintiff seeks relief. Also, the "association in fact" which the plaintiff alleges consists of a body that can act only by and through its agents, such as Yohe and Wartell. These flaws are fatal to a successful pleading of a cause of action under 18 U.S.C.A. § 1962(c). We shall, therefore, grant the defendants' motion as it pertains to dismissal of the plaintiff's cause of action under 18 U.S.C.A. § 1962(c) and dismiss the same.

■ 18 U.S.C.A. § 1962(d) (West Supp. 1991) reads: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." In the amended complaint, the conspirators are alleged to be the three defendants: the Airport Authority, its Director, Yohe, and its Chairman of the Board of Directors, Wartell. "The majority rule is that conspiracy cannot lie against the corporate entity for the concerted action of its employees who violate RICO on its behalf. *McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1510, 1512 (D.N.J.1985)." *Lawaetz v. Bank of Nova Scotia*, 653 F.Supp. 1278, 1287 (D.V.I.1987). *See also Yancoski v. E.F. Hutton & Co., Inc.*, 581 F.Supp. 88, 97 (E.D.Pa.1983) (court rejected attempt to hold stockbroker and brokerage liable under 18 U.S.C.A. § 1962(d) on grounds that a corporation and its employees are not capable of a civil conspiracy).

*Callan v. State Chemical Manufacturing Co.*, 584 F.Supp. 619 (E.D.Pa.1984), is cited by the plaintiff in support of its argument that the defendants should be held liable under 18 U.S.C.A. § 1962(d). *Callan* did hold a chemical company and its agents and officers liable for conspiracy in a civil RICO action. The *Callan* court did not cite to any authority within this Circuit, but

instead preferred to follow a Southern District of New York case, *Mauriber v. Shearson/American Express, Inc.*, 567 F.Supp. 1231 (S.D.N.Y.1983), which it believed embodied the better view of this issue. Also, the *Callan* court noted that the complaint alleged a conspiracy of the company-defendant, its "employees, agents *and others.*" *Callan*, 584 F.Supp. at 623 (emphasis in original). The court in *Callan* found that the plaintiff had thus adequately alleged a conspiracy under § 1962(d).

We find *Callan* distinguishable from the case at bar. There is no allegation of a conspiracy with "others" in the amended complaint here. Also, we prefer to follow the majority of courts who have declined to hold a corporation and its agents and employees liable for a civil conspiracy. We shall, therefore, grant that part of the defendants' motion to dismiss as it pertains to the defendants' liability under 18 U.S.C.A. § 1962(d) with prejudice.

*COUNT 6—AIRWAY AND AIRPORT IMPROVEMENT ACT*

■ The plaintiff argues that it is alleging that the Airport Authority's discriminatory conduct violates 49 U.S.C.A.App. § 2210 and that this violation of its rights under this federal law gives rise to a cause of action under 42 U.S.C.A. § 1983. The defendants seek dismissal of this cause of action claiming there is no private right of action under this statute.[5]

No court in the Third Circuit has as yet considered this issue. *Rocky Mountain Airways, Inc. v. Pitkin County*, 674 F.Supp. 312 (D.Colo.1987), however, addressed it and found that a plaintiff cannot bring an action under 42 U.S.C.A. § 1983 based upon 49 U.S.C.A.App. § 2210. The court in *Rocky Mountain Airways* first considered the language of the relevant statutes:

Section 2210 essentially provides that any airport receiving federal assistance for an airport development project must provide the Secretary of Transportation with written assurances that the airport

'will be available for public use on fair and reasonable terms and without unjust discrimination....' Section 1983 gives a cause of action to every person within the jurisdiction of the United States who, under color of state regulation, is deprived of any rights secured by 'the Constitution and laws' of the United States.

*Id.* at 317.

After discussing the general meaning of these statutes, the court opined:

Although Section 1983 encompasses more than merely civil rights and equal protection statutes, however, not every federal statute is privately enforceable via Section 1983. Specifically, a federal statute does not provide a private right of action enforceable under Section 1983 if either (1) Congress foreclosed private enforcement when it enacted the statute, or (2) the statute is not of 'the kind' that creates enforceable rights under Section 1983. *Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981).

*Id.* at 317–318.

Under *Middlesex County*, 453 U.S. at 19–20, 101 S.Ct. at 2626, Congress will be found to have foreclosed a remedy under 42 U.S.C.A. § 1983 "when the federal statute itself provides other remedial devices or creates its own comprehensive scheme." *Rocky Mountain Airways*, 674 F.Supp. at 318. The Airway and Airport Improvement Act does create its own comprehensive administrative enforcement scheme. The Supreme Court has furnished little guidance on the issue of what makes a federal statute of "the kind" that creates rights enforceable under 42 U.S.C.A. § 1983. *Id.* In *Rocky Mountain Airways*, the court looked to a prior Supreme Court case, *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), and stated:

---

5. Defendants also seek dismissal on grounds of nonspecificity; lack of custom or policy; and qualified immunity for the individual defendants. Since we find that there is no private right of action under this act, we shall not discuss these other grounds for dismissal.

The Supreme Court in *Pennhurst* did not reach the question of whether the statute in that case gave rise to a cause of action under Section 1983. *Pennhurst*, 451 U.S. at 28, n. 21, 101 S.Ct. at 1545 n. 21. However, its discussion of the issue, and the fact that it even chose to note the distinction at all [between alleging that a state law prevents plaintiffs from receiving federal funds to which they were entitled and a claim that a state plan has not provided adequate 'assurances' to the Secretary], substantially convince this court that a statute requiring 'assurances' before federal funds are advanced to a state or local government is not 'the kind' of statute which creates a right enforceable under Section 1983. As noted above, 49 U.S.C. § 2210 merely provides that the Secretary of Transportation must receive written 'assurances' from an airport that certain standards and requirements will be met before federal funds may be advanced for an airport development project. As such, it clearly falls within the class of statutes referred to by the Supreme Court in *Pennhurst*. Therefore, since 49 U.S.C. § 2210 is not 'the kind' of statute that creates rights enforceable under 42 U.S.C. § 1983, defendants' motion to dismiss with respect to the third claim for relief, will be granted. *Id.*

We agree with the analysis set forth in *Rocky Mountain Airways*. Accordingly, the plaintiff's claim under the Airport and Airway Improvement Act, 49 U.S.C.A.App. § 2210, shall be dismissed.[6]

### COUNTS 7, 8, 9, 10 AND 11—PENDENT STATE LAW CLAIMS

In its amended complaint, the plaintiff alleges intentional interference with business relations and prospective business relations (Counts 7 and 8); defamation (Count 10); and breach of a contractual duty of good faith dealing (Count 11). The plaintiff also brings a private cause of action under the Pennsylvania Municipality Authorities Act of 1945, 53 Pa.Stat.Ann. § 306 (Purdon Supp.1990) (Count 9). Since not all of the plaintiff's federal claims have been dismissed, we shall retain pendent jurisdiction over the plaintiff's state law claims. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966).[7] The defendants' motion to dismiss these claims is, therefore, denied.

### COUNTS 12 AND 13

Plaintiff denominates the twelfth and thirteenth causes of action "Respondeat Superior" and "Aiding and Abetting", respectively. These are theories of liability and not separate causes of action in their own right. They shall, therefore, be dismissed as well with prejudice although plaintiff is free to use such theories in conjunction with other causes of action to

---

**6.** The plaintiff cites to *New York Airlines, Inc. v. Dukes County*, 623 F.Supp. 1435 (D.Mass.1985) and to *New England Legal Foundation v. Massachusetts Port Authority*, 883 F.2d 157 (1st Cir. 1989) ("NELF") to support its argument that a private party can bring an action under 42 U.S.C.A. § 1983 for conduct violative of 49 U.S.C.A. App. § 2210. The District Court in *Dukes County* did allow such an action. It is not proper, however, to interpret *NELF*—as does the plaintiff—as the First Circuit's endorsement of such a finding. The issue before the First Circuit in *NELF* was whether a private right of action existed under 49 U.S.C.A.App. § 2210. The Circuit Court found that none existed and even cited *Rocky Mountain Airways*, 674 F.Supp. 312 in support of its holding: "*Cf. Rocky Mountain Airways, Inc. v. Pitkin County*, 674 F.Supp. 312 (D.Colo.1987) (airline has no private cause of action against county under 42 U.S.C. § 1983 for county's alleged violation of § 511)." *NELF,*

883 F.2d at 169. "*Cf.*", as all readers of the "Blue Book" know, means: "Cited Authority supports a proposition different from the main proposition but sufficiently analogous to lend support." The Harvard Law Association, *A Uniform System of Citation* (13th ed.1981).

We have found the reasoning of *Rocky Mountain Airways* to be more persuasive than that of *Dukes County* and, accordingly, have chosen to follow it in the instant case.

**7.** 28 U.S.C.A. § 1367 (West Supp.1991) codifies under the name of "supplemental jurisdiction" the case law doctrines of "pendent" and "ancillary" jurisdiction. This section, however, applies to civil actions commenced on or after December 1, 1990. The original complaint in the instant case was filed on February 22, 1990. We have, therefore, not included a discussion of this statute in the foregoing opinion.

the extent that they are relevant and properly pleaded.