NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2649
_____

LAUREL GARDENS LLC; AMERICAN WINTER SERVICES LLC;
LAUREL GARDENS HOLDINGS LLC; LGSM GP; CHARLES P. GAUDIOSO,
Appellants

v.

TIMOTHY MCKENNA; MICHAEL MCKENNA; MAT SITE MANAGEMENT, LLC;
BOBBY AERENSON; GREGORY PETTINARO; CHARLES WILKINSON;
WILKINSON BUILDERS, LLC; TECHNIVATE, INC.; THOMAS DIDONATO;
KEVIN EAISE; EAISE DESIGN & LANDSCAPING, LLC; EAISE SNOW SERVICES,
LLC; HAINES & KIBBLEHOUSE, INC; HANK JULICHER; MARGIT JULICHER;
CHRISTOPHER W. WRIGHT; DON ISKEN; PAUL ISKEN; LONGVIEW
MANAGEMENT, LLC; MATTHEW SIBLEY; M&M LANDSCAPING, LLC; ALAN
PERRY; MARY TRESIZE; FRANK ALCARZ; STRIVE FORCE, LLC; MJL
ENTERPRISES; JOHN HYNANSKI; NORMAN AERENSON; ISKEN
ENTERPRISES, LLC; FRONTIER MULCH, LLC; SAUL EWING, LLP; DAVID
FALCONE; JOHN SNYDER
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 5-17-cv-0570)
District Judge:  Honorable Jeffrey L. Schmehl
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 27, 2024

Before:  JORDAN, SMITH, *Circuit Judges*
and BUMB,[*] *Chief District Judge.*

_____

[*] Honorable Renée Marie Bumb, Chief District Judge of the United States District
Court for the District of New Jersey, sitting by designation.

_____

OPINION**

_____

JORDAN, *Circuit Judge*

In this civil RICO case, plaintiffs Laurel Gardens, LLC, American Winter Services, LLC, Laurel Gardens Holdings, LLC, LGSM, GP, and Charles P. Gaudioso (collectively, "Laurel Gardens" or "the Company") appeal the District Court's order granting summary judgment to defendants Don Isken, Paul Isken, and Isken Enterprises, LLC (the "Iskens"), and Henry and Margit Julicher (the "Julichers"). Laurel Gardens alleges that the Iskens and the Julichers helped a thieving employee, defendant Timothy McKenna, render it insolvent. The District Court granted summary judgment against Laurel Gardens, holding that the Company had failed to demonstrate an association-in-fact between the Iskens, the Julichers, and McKenna. Because the District Court erred as a matter of law, we will vacate and remand.

I. **BACKGROUND**

A. **Factual Background**

In March 2012, Charles Guadioso formed Laurel Gardens Holdings to purchase Laurel Gardens, LLC, LGSM GP, and American Winter Services, LLC. The combined enterprise offered landscaping and snow removal services. One of Laurel Gardens's

---

** This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

senior managers, Timothy McKenna, was secretly offering the Company's services to his own creditors for free, as a way of repaying his personal debts.

According to Laurel Gardens, McKenna also received loans by offering the Company's services for free, and he used that money to start a competing business, luring away Laurel Gardens's customers and thus rendering it insolvent. The Iskens and the Julichers were two of McKenna's creditors. Laurel Gardens asserts that they continued to lend money to McKenna to help him start his own business with the purpose of bankrupting Laurel Gardens. In this way, they would "ensure the loans would be paid in full," which could only happen if McKenna "fulfilled [his] vision" of supplanting the Company. (Opening Br. at 23.) Laurel Gardens claims that the Iskens and Julichers thus aided and abetted McKenna's illegal activities. It also alleges that Henry Julicher made a series of physical and financial threats, intending to control Laurel Gardens.

### B.    Procedural History[1]

Laurel Gardens sued thirty-three defendants in the Eastern District of Pennsylvania, alleging violations of the federal Racketeer Influenced and Corrupt Organizations statute ("RICO"), 18 U.S.C. § 1962(b), (c), and (d), and asserting several state law claims.[2] Eventually, every defendant except for the Julichers and the Iskens

---

[1] All citations to "Docket Items" (D.I.) refer to the District Court's docket, located at *Laurel Gardens v. McKenna, LLC*, No. 5-17-cv-0570 (E.D. Pa.).

[2] This is the second time this case has been before us on appeal. In *Laurel Gardens, LLC v. McKenna*, we vacated the District Court's dismissal of the Iskens for lack of personal jurisdiction. 948 F.3d 105, 109, 124 (3d Cir. 2020).

were taken out of the case: some settled with Laurel Gardens, others were voluntarily dismissed, and a few were dismissed by the District Court. The Iskens and Julichers filed motions for summary judgment, which the Court denied.

After fact discovery closed, the District Court granted the Iskens' and Julichers' renewed motions for summary judgment, holding that Laurel Gardens failed to establish that the Iskens, Julichers, and McKenna constituted an association-in-fact criminal enterprise, as – the Court concluded – was required by § 1962(b) and (c). The Court held that the evidence did not demonstrate "the requisite relationships among" McKenna and the Iskens and Julichers.[3] (J.A. at 16.) The Court also held that the claim under § 1962(d), conspiracy to commit a RICO violation, failed because no enterprise existed. Finally, it declined to exercise supplemental jurisdiction over the state law claims and dismissed the whole action.

Laurel Gardens timely appealed. It does not challenge the District Court's dismissal of claims under § 1962(c). It argues only that the Court erred by dismissing the claims brought under § 1962(b) and (d) and state law.

---

[3] McKenna was supposedly the "hub" of an alleged association-in-fact enterprise consisting of a "hub, spokes, and rim" (J.A. at 16), with the Julichers and the Iskens as the "spokes," funding McKenna's efforts to put Laurel Gardens out of business.

4

## II. DISCUSSION[4]

Laurel Gardens argues that the District Court improperly conflated subsections (b) and (c) of § 1962, and in so doing improperly dismissed its subsection (b) and (d) claims and the state law claims. We agree.

RICO was enacted as Title IX of the Organized Crime Control Act of 1970, Pub. L. 91-452, 84 Stat. 922, 941-48, with, as the name indicates, the aim of toppling organized crime. It provides a private right of action for anyone "injured in his business or property by reason of a violation of section 1962 of this chapter[.]" 18 U.S.C. § 1964(c). Section 1962 "protects a legitimate 'enterprise' from those who would use unlawful acts to victimize it, and also protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful ... activity is committed[.]'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001) (citation omitted) (quoting *United States v. Turkette*, 452 U.S. 576, 591 (1981); and then quoting *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 259 (1994)).

Accordingly, RICO prohibits two kinds of activities: one in which an enterprise becomes the victim of illegal activity and one in which the enterprise itself is used to commit crimes. Subsections (a) and (b) prohibit the former, namely, "the acquisition of

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c). We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review the District Court's order granting summary judgment and questions of statutory interpretation *de novo.*" *Pa. State Conf. of NAACP Branches v. Sec'y Commw. of Pa.*, 97 F.4th 120, 129 n.5 (3d Cir. 2024).

an enterprise" through or with funds derived from illegal activities. *Reves v. Ernst & Young*, 507 U.S. 170, 182 (1993) (citing 18 U.S.C. § 1962(a)-(b); *see Scheidler*, 510 U.S. at 259 ("The enterprise in these subsections is the victim of unlawful activity[.]")).

Subsection (c), by contrast, prohibits "the operation of an enterprise through a pattern of racketeering activity[.]" *Reves*, 507 U.S. at 182. So, the "'enterprise' in subsection (c) connotes generally the vehicle through which the unlawful pattern of racketeering activity is committed, rather than the victim of that activity." *Scheidler*, 510 U.S. at 259.

Laurel Gardens appeals the Court's decision with respect to subsection (b), as well as the follow-on decisions to dismiss the subsection (d) claim (conspiracy to violate RICO) and the state law claims. Subsection (b) makes it "unlawful for any person through a pattern of racketeering activity … to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). To demonstrate such a violation, the plaintiff must show three things: (1) the defendant has an interest in or control of an enterprise; (2) the defendant gained or maintained that interest or control through a pattern of racketeering; and (3) the enterprise affects interstate commerce. *See Macauley v. Est. of Nicholas*, 7 F. Supp. 3d 468, 485 (E.D. Pa. 2014).[5]

---

[5] "RICO recognizes liability for those who merely aid and abet the underlying predicate offenses." *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990).

> [T]o find a defendant liable for aiding and abetting a predicate act under RICO, the plaintiff must prove (1) that the substantive act has been committed, and (2) that the defendant alleged to have aided and abetted

RICO does not define the type of "interest" and "control" necessary to violate subsection (b) in relation to a victim enterprise, so courts consider "the ordinary meaning of the words used." *Russello v. United States*, 464 U.S. 16, 21 (1983) (quoting *Richards v. United States,* 369 U.S. 1, 9 (1962)) (noting that RICO does not define "interest"); *Moffatt Enters., Inc. v. Borden, Inc.*, 763 F. Supp. 143, 147 (W.D. Pa. 1990) (noting that RICO does not define "control"). The Supreme Court has defined "interest" in the context of RICO's forfeiture provision, § 1963(a)(1), as "'a right, claim, title or legal share in something['] … including profits and proceeds." *Russello*, 464 U.S. at 21 (quoting *Black's Law Dictionary* 729 (5th ed. 1979)); *see also United States v. Jacobson*, 691 F.2d 110, 113 (2d Cir. 1982) (extending a similar definition to § 1962(b)); *cf. Pulsifer v. United States*, 144 S. Ct. 718, 735 (2024) ("In a given statute, the same term usually has the same meaning[.]" (citing A. Scalia & B. Garner, *Reading Law* 170-71 (2012)). "Control" of an enterprise denotes, inter alia, the power to manage, direct, or govern the enterprise. *Control*, *Black's Law Dictionary* (5th ed. 1979) ("Power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee."); *cf. Moffatt*, 763 F. Supp. at 147-48 ("[T]he 'control' contemplated [in § 1962(b)] is in the nature of the control one gains through the acquisition of sufficient stock to … elect one or more [of an enterprise's] directors.").

---

the act knew of the commission of the act and acted with intent to facilitate it.

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 270 (3d Cir. 1995).

It follows that the harm forbidden by subsection (b) must result from the acquisition of control of or an interest in an enterprise, and not merely from the predicate racketeering acts that are aimed at the acquisition. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993). And there must be a causal link; the defendant must have gained his interest or control in the victim enterprise "as a result of racketeering[.]" *Id.* Thus, "[i]t is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise." *Id.*

In dismissing Laurel Gardens's claim, the District Court conflated two distinct concepts: the "vehicle" enterprise of subsection (c) and the "victim" enterprise of subsection (b). It held that Laurel Gardens had failed to demonstrate the requisite relationship between the participants in an alleged criminal enterprise – as needed to find an association-in-fact "vehicle" enterprise – and then said summarily, "Because establishing the existence of an enterprise [i.e., a vehicle] is central to Plaintiffs' claims under section 1962(b) and (c), the Court must dismiss those claims." (J.A. at 21.)

That was error. In fact, Laurel Gardens's asserted "victim" enterprise for the purpose of its subsection (b) claim is Laurel Gardens itself, not McKenna's alleged criminal syndicate "vehicle."[6] Thus, we will vacate the District Court's grant of

---

[6] The Iskens and the Julichers assert that Laurel Gardens forfeited the theory that Laurel Gardens is the RICO victim enterprise. Not so. Regarding its § 1962(b) claim, Laurel Gardens said, "In this case, the business enterprises – [Laurel Gardens Holdings], [Laurel Gardens], [American Winter Services], and LGSM – were the victims through which the McKennas' [sic] carried out their criminal enterprise because the McKennas [, i.e., Timothy and Michael,] were senior management within the business enterprises." (D.I. 293 at 20; *see also id.* at 27 n.4 ("[T]he Julichers write that 'Plaintiffs are obviously not the enterprise.' The Julichers have not grasped the fact that [Laurel Gardens] and

8

summary judgment to the defendants on the subsection (b) claim and remand the case to the District Court.

On remand, the Court must consider whether the Julichers and the Iskens obtained or maintained "interest or control" in Laurel Gardens "through a pattern of racketeering activity[.]" § 1962(b). There may well not have been an acquisition or an acquisition injury,[7] nor racketeering activities and an intent to aid and abet them. But, generally, "a federal appellate court does not consider an issue not passed upon" by a district court, *Singleton v. Wulff*, 428 U.S. 106, 120 (1976), so we will let the District Court here make the initial determination on those issues.

The District Court also dismissed Laurel Gardens's § 1962(d) claim and state law claims based on its erroneous ruling on the § 1962(b) claim. Accordingly, we will vacate the dismissal of those claims as well.

---

[American Winter Services] *are* the business enterprises for RICO purposes[.]" (citation omitted)).) Laurel Gardens's damages theory does not change the analysis; its expert considered the defendants severally liable for all of its harms.

[7] *Compare Ne. Jet Ctr. v. Lehigh-Northampton Airport Auth.*, 767 F. Supp. 672, 683 (E.D. Pa. 1991) (finding no § 1962(b) acquisition when the plaintiff merely alleged "that a campaign of misrepresentation and disparagement compelled the plaintiff to sell off some of its property at an undesirable price"), *with Kaiser v. Stewart*, No. Civ. A. 96-6643, 1997 WL 476455, at \*4, \*7 & n.10 (E.D. Pa. Aug. 19, 1997) (finding a § 1962(b) acquisition and acquisition injury where defendant took control of the plaintiff's enterprise and rendered it insolvent).

**III.    CONCLUSION**

For the foregoing reasons, we will vacate the District Court's grant of summary judgment to the Iskens and the Julichers and remand for proceedings consistent with this opinion.